IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Sallie M. Zeigler, as Personal Representative of the Estate of Alton Ray Zeigler, <br><br> Plaintiff, <br> v. <br><br> Eastman Chemical Company and Mundy Maintenance Services and Operations, LLC, <br><br> Defendants. | Civil Action No.: 5:17-cv-01010-JMC <br><br> **ORDER AND OPINION** |

Plaintiff Sallie M. Zeigler ("Plaintiff"), as Personal Representative of the Estate of Alton Ray Zeigler ("Zeigler"), filed this wrongful death and survival action alleging that Zeigler was injured and subsequently died as a result of the negligence of Defendants Eastman Chemical Company ("Eastman") and Mundy Maintenance Services and Operations, LLC ("Mundy") (together "Defendants"). (ECF No. 1.)

This matter is before the court on Plaintiff's Motion for Reconsideration (ECF No. 126) of the Order entered on October 23, 2018 (the "October Order"), granting Eastman's Motion to Dismiss (ECF No. 55). (ECF No. 112 at 19–20.) Eastman opposes Plaintiff's Motion asserting that the October Order "correctly granted Eastman's Motion to Dismiss." (ECF No. 127 at 10.) For the reasons set forth below, the court **DENIES** Plaintiff's Motion for Reconsideration.

I.     RELEVANT BACKGROUND TO PENDING MOTION

This case arises out of an industrial accident that occurred on December 6, 2016, at a chemical manufacturing facility (the "Facility") located "on the banks of the Congaree River near Sandy Run a few miles northeast of Gaston in Calhoun County, South Carolina." (ECF No. 60 at 2.) Eastman operated the Facility from 1967 until 20ll manufacturing polyethylene

1

terephthalate ("PET"), a material "commonly used in soda bottles." (ECF No. 1 at 4 ¶¶ 13–15.) On January 31, 2011, Eastman sold specified parts of the Facility to DAK Americas, LLC ("DAK"), "a subsidiary of Alpek S.A.B. de C.V., a Mexican chemical manufacturing company." (*Id.* ¶ 15.) "DAK purchased . . . polymer and chemical manufacturing lines, certain on-site utilities and services to support such operations, but specifically excluded some retained facilities at the Plant." (ECF No. 60 at 3.) "Among the retained assets [of Eastman] were: 1,000 acres of land, six to ten buildings and four production lines out of thirteen which are making substantially similar products to those produced prior to the sale (the 'Retained Assets')." (*Id.* (citing ECF No. 79-1 at 29:14–30:25, 32:3–14, 53:1–25 & ECF No. 79-2 at 28:13–29:9, 53:3–15).) Additionally, "[w]hen Eastman sold the Facility to DAK, nearly all of Eastman's 400 employees at the site became DAK employees at the time of the sale and continued doing the same jobs." (ECF No. 55 at 4 (citing ECF No. 79-1 at 57:1–23).) As a result, DAK's employees "operate[d] and maintain[ed] Eastman's retained lines the same way that they did while they were employed by Eastman." (ECF No. 79-1 at 57:13–17.)

"Two contracts between Eastman and DAK memorialize that agreement." (ECF No. 55 at 5.) "First, under the Operating Agreement, Eastman pays DAK to provide its employees to operate the Eastman Retained lines, which generally run twenty-four hours a day." (*Id.* (referencing ECF No. 55-3).) "The operators report to supervisors within DAK's chain of command, and the DAK Area Manager serves as the liaison to Eastman." (*Id.*) "Second, there is a separate Services Agreement, under which Eastman pays DAK to provide, among other things, employees from DAK's maintenance department to perform maintenance and repairs on the Retained Lines." (*Id.* (referencing ECF No. 55-4).) "DAK's employees, including Zeigler, were Eastman's operations and maintenance workforce at the time of the Incident pursuant to the

Operations Agreement and Services Agreement." (*Id.* at 6 (citations omitted).) As an operations and maintenance worker, Zeigler did the same type of work for DAK after the sale as he did for Eastman before the sale. (ECF No. 79-1 at 60:1–6.)

After purchasing the Facility, DAK contracted with Mundy to "provide[] maintenance services at the site." (ECF No. 79-2 at 126:19–20.) Employees of Mundy were asked on December 3, 2016, "to heat a drain pipe [] near the Pump with a torch flame." (ECF No. 56 at 3.)

On December 6, 2016, Zeigler, along with DAK co-workers, Kevin Vann and Jacob S. Jackson, were assigned to perform preventative maintenance on line A, one of the four Eastman "Retained Asset" production lines, which involved draining the AC-11 loop to clean out any molten material and pulling/separating the AC-11 pump from its housing to replace a leaking seal. (ECF No. 79-1 at 109:5–11, 114:9–14, 115:7–15 & 135:2–24.) During the performance of this maintenance, "an explosion erupted shortly after [] [Zeigler, Vann and Jackson] loosened bolts on the pump." (ECF No. 60 at 6.) The explosion sprayed hot molten polymer throughout the workspace, killing Zeigler and injuring Vann and Jackson. (*Id.*)

As a result of the foregoing, Plaintiff filed an action in this court on April 19, 2017, alleging claims against Eastman for negligence, wrongful death, negligent failure to warn and loss of consortium and against Mundy for negligence, wrongful death and loss of consortium. (ECF No. 1 at 9 ¶ 61–18 ¶ 98.) Additionally, Plaintiff alleged that she is entitled to an award of punitive and exemplary damages. (*Id.* at 18 ¶¶ 99–103.) After engaging in court-ordered jurisdictional discovery with Plaintiff (*see* ECF No. 40 at 1 ¶ 2), Eastman filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction on November 30, 2017, asserting that Zeigler was a "statutory employee" of Eastman under the South Carolina Workers' Compensation Act

(the "Act"), S.C. Code §§ 42-1-10 to -19-50 (2017), such that the Act is Plaintiff's exclusive remedy. (ECF No. 55.) In her December 21, 2017 Response in Opposition, Plaintiff expressly did not agree that Zeigler was Eastman's statutory employee for purposes of its Motion. (ECF No. 60.) Thereafter, the court entered the October Order granting Eastman's Motion to Dismiss. (ECF No. 112.)

On February 22, 2019, Plaintiff filed the instant Motion for Reconsideration. (ECF No. 126.)

## II. LEGAL STANDARD AND ANALYSIS

In the October Order, the court made the following observations in granting Eastman's Motion to Dismiss (ECF No. 55):

> To determine whether Zeigler was a statutory employee of Eastman at the time of his death, the court considered the parties' evidence concerning Eastman's general trade, business, or occupation. *See Poch*, 747 S.E.2d at 761 ("[T]his Court has the power and duty to review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence." (citation omitted)). Upon its review, the court observes that the parties dispute what is Eastman's business, trade, or occupation. Eastman asserts that it is in the business of producing specialty chemicals. (ECF No. 79-1 at 22:21–23; ECF No. 79-2 at 31:10–13, 166:19–167:4.) Plaintiff asserts that Eastman is "a chemical product sales company, selling chemicals produced by DAK employees on equipment owned by Eastman" because it "does not receive the raw materials, does not have any employees capable of running the operations of the lines, does not remove the product from the line, and does not place the product into shipping containers." (ECF No. 60 at 21 (citing ECF No. 79-2 at 92:15–93:19)). Despite the parties' contrasting positions, there is no dispute of fact that Eastman's business requires the presence of chemical product and without such chemical product, Eastman cannot sell or produce anything. Moreover, caselaw does not necessarily require that such chemical product be exclusively produced by Eastman's employees. *See Singleton*, 533 F. Supp. at 890 ("[A] person is performing the trade, business or occupation of the employer if the person contracts with the owner to perform a duty which is essential to the function of the owner's continued business despite the fact the owner may never have performed the same chore with his own employees." (citations omitted)).
>
> On the day Zeigler died, there is also no dispute of fact that he was performing preventative maintenance on one of the lines that produces chemicals for Eastman. (ECF No. 79-1 at 112:2–117:2.) The appellate courts of South Carolina

have held that maintenance considerations are an important part of a statutory employer's trade, business, or occupation. In *Marchbanks v. Duke Power Co.*, 2 S.E.2d 825 (S.C. 1939), "the [South Carolina Supreme] Court found that an independent contractor who was hired to paint telephone poles on behalf of Duke Power was a statutory employee under the Workmen's Compensation Law on the basis that Marchbanks was engaged in part of the defendant's business, because the maintenance of utility poles was necessary to the distribution of electricity." *Singleton*, 533 F. Supp. at 890 (citing *Marchbanks*, 2 S.E.2d at 837). In *Boseman v. Pac. Mills*, 79, 8 S.E.2d 878, (S.C. 1940), the South Carolina Supreme Court stated as follows in finding that the maintenance of the water tank was an integral part of the mill's business for fire prevention purposes:

> The tank was an integral part of the mill business. There was also testimony to the effect that the mill desired that the work on the inside of the tank be completed as soon as possible so that its every day, ordinary service, that of fire protection, could be resumed, it being shown that the mill depended upon this tank for such protection. The very nature of the work done by the mill, that of the manufacture of cotton into cloth, especially required the best of protection against fire. Hence, this tank was particularly necessary and essential in the operation and carrying on of the business of the mill. It, therefore, follows that the painting of the tank was such a part of the trade, business or occupation of the Pacific Mills as would constitute Martin a subcontractor and thus render the mill liable to the beneficiary of Boseman for payment of compensation.

*Id.* at 880. In *Bridges v. Wyandotte Worsted Co.*, 132 S.E.2d 18 (S.C. 1963), the Supreme Court of South Carolina again held that maintenance was part of the trade, business, or occupation of the statutory employer:

> In the present case, the defendant was engaged in the manufacture of woolen goods. Its machinery was operated by electricity derived in part from its own hydro-electric plant and in part by purchase from Duke Power Company. The work here involved was the repair or replacement of the transmission line owned by the defendant and located on its property, over which electric current, necessary for the operation of its business, was brought into its plant from Duke Power Company. These lines had been replaced on a previous occasion, and customarily maintained, by a qualified crew regularly employed by the defendant. Because the regular employees of the defendant had been overworked and needed rest, the defendant contracted with Collins Electric Company, plaintiff's employer, to make the needed replacements on its transmission lines. The replacement of the lines was made necessary by an overload placed upon them by the addition of machinery in defendant's mill. It is reasonably inferable from the record that the work of replacing the transmission lines in question was [] an unusual or extraordinary undertaking, but one customarily done by defendant's employees who were maintained for such purposes. The maintenance

5

and repair of its electrical system was, therefore, made a part of the work done by the defendant in the prosecution of its business of manufacturing woolen goods.

*Id.* at 23.

Therefore, upon consideration of the foregoing caselaw in the context of the facts presented by the parties, the court is persuaded that maintenance on a line that produces chemicals that Eastman sells is an important part of Eastman's trade, business, or occupation. *E.g., Singleton*, 533 F. Supp. at 891 ("The continued maintenance and repair of these electrical lines were absolutely essential to the continued operation of the textile plant."). Accordingly, the court finds that Zeigler was a statutory employee of Eastman.[1]

(ECF No. 112 at 12–14.)

Plaintiff seeks reconsideration of the October Order pursuant to Rules 54(b), 60(b)(1), and/or 60(b)(5) of the Federal Rules of Civil Procedure.

A.  Standard for Relief Pursuant to Rules 54(b), 60(b)(1), and 60(b)(5)

Rule 54(b) provides the following:

When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am.*

---

[1] "An activity needs to meet just one of the three tests outlined in *Edens* for an employee to be a statutory employee under the" Act. *Jarman v. Beaufort-Jasper Water & Sewer Auth.*, No. 9:15-cv-00356-DCN, 2017 WL 1881330, at *3 n.2 (D.S.C. May 9, 2017) (citing *Edens*, 597 S.E.2d at 868). Because the court finds that Zeigler was a statutory employee of Eastman since the maintenance work he was performing at his death was an important part of Eastman's trade, business, or occupation, the court is not required to address the second or third statutory employee tests outlined in *Edens*.

*Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion, but has held motions under Rule 54(b) are "not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n*, 326 F.3d at 514; *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991) (the Court found it "unnecessary to thoroughly express our views on the interplay of Rules 60, 59, and Rule 54"). In this regard, district courts in the Fourth Circuit, in analyzing the merits of a Rule 54 motion, look to the standards of motions under Rule 59 for guidance. *See U.S. Home Corp. v. Settlers Crossing, LLC*, C/A No. DKC 08-1863, 2012 WL 5193835, at *2 (D. Md. Oct. 18, 2012); *R.E. Goodson Constr. Co., Inc. v. Int'l Paper Co.*, C/A No. 4:02-4184-RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006); *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565–66 (M.D.N.C. 2005). Therefore, reconsideration under Rule 54 is appropriate on the following grounds: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, C/A No. PJM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010) ("This three-part test shares the same three elements as the Fourth Circuit's test for amending an earlier judgment under Rule 59(e), but the elements are not applied with the same force when analyzing an[] interlocutory order.") (citing *Am. Canoe Ass'n*, 326 F.3d at 514).

Rule 60(b) allows the court to relieve "a party . . . from a final judgment, order, or proceeding" due to (1) "mistake, inadvertence, surprise, or excusable neglect"; (5) a satisfied, released, or discharged judgment; or (6) "any other reason that justifies relief." Fed. R. Civ. P.

60(b); *see also United States v. Winestock*, 340 F.3d 200, 203–4 (4th Cir. 2003). Rule 60(b) "does not authorize a motion merely for reconsideration of a legal issue." *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982). "Where the motion is nothing more than a request that the district court change its mind . . . it is not authorized by Rule 60(b)." *Id.* at 313. "A motion for reconsideration under Rule 60(b) is addressed to the sound discretion of the district court and . . . [is] generally granted only upon a showing of exceptional circumstances." *Lyles*, 2016 WL 1427324, at *1 (citation and internal quotation marks omitted).

B. The Parties' Arguments

In her Motion, Plaintiff asserts that reconsideration of the October Order "is warranted because the recent South Carolina Court of Appeals Opinion in *Keene, et al. v. CNA Holdings, LLC*[, App. Case No. 2016-000227, 2019 WL 575556 (S.C. Ct. App. Feb. 13, 2019), *reh'g denied*,] constitutes a change in controlling law or at the very least a clarification of controlling law relied upon by the Court in this case." (ECF No. 126 at 4.) Plaintiff argues that in *Keene*, "the South Carolina Court of Appeals held that it had 'correctly determined that even though the maintenance work [plaintiff] performed was essential for conduct of manufacturing polyester fiber, it does not mean that equipment maintenance was a part or process of manufacturing business.'" (*Id.* at 5–6 (quoting *Keene*, 2019 WL 575556, at *4).) Plaintiff further argues that applying the *Keene* reasoning to the facts of the instant case results in the conclusion that "[a]lthough the maintenance work performed by Alton Zeigler may have been important to Eastman's manufacturing business, it does not follow that such maintenance was a 'part or process' of Eastman's manufacturing business at the Facility." (*Id.* at 8.) Therefore, Plaintiff asserts that the October Order contains clear error and the court "has an opportunity to correct what is now an inequitable and manifest injustice." (*Id.*)

Eastman opposes the Motion for Reconsideration asserting that the *Keene* decision does not affect the October Order because:

> (1) The statutory employer analysis is highly fact-specific, and the unique facts of this case differ substantially from the facts in *Keene*. (2) The work performed by Zeigler was a "part or process" of Eastman's manufacturing business. (3) DAK's employees and Eastman's employees performed the same maintenance and repair work on the production lines in the facility. (4) In addition to the grounds stated in the Court's Order, Eastman also meets the third test for determining whether the activity of a worker is sufficient to make him a statutory employee. (5) It would be inequitable for the Court to reverse its prior Order. (6) The procedural posture of the *Keene* case is uncertain.

(ECF No. 127 at 1–2, 4–11.)

C. The Court's Review

In the October Order, the court found that Zeigler was a statutory employee of Eastman because he was injured performing maintenance on a line that produced chemicals the selling of which was "an important part of Eastman's trade, business, or occupation."[2] (ECF No. 112 at 14.)

In the instant Motion, Plaintiff seeks reconsideration of the October Order to account for an intervening change in controlling law, to correct a clear error of law, and to prevent a manifest injustice. (ECF No. 126 at 4–5, 8.) Plaintiff generally asserts that she is entitled to relief from the October Order based on the South Carolina Court of Appeals' decision in *Keene* and the South Carolina Supreme Court's opinions in *Olmstead v Shakespeare*, 581 S.E.2d 483 (S.C. 2003), and *Abbott v. The Ltd., Inc.*, 526 S.E.2d 513 (S.C. 2000). In these cases, statutory

---

[2] As the court observed in the October Order, the parties dispute what is Eastman's business. "Eastman asserts that it is in the business of producing specialty chemicals." (ECF No. 112 at 12 (citing ECF No. 79-1 at 22:21–23; ECF No. 79-2 at 31:10–13, 166:19–167:4).) "Plaintiff asserts that Eastman is 'a chemical product sales company, selling chemicals produced by DAK employees on equipment owned by Eastman' because it 'does not receive the raw materials, does not have any employees capable of running the operations of the lines, does not remove the product from the line, and does not place the product into shipping containers.'" (*Id.* (citing ECF No. 60 at 21).) From the foregoing, it is still reasonable to extrapolate that Eastman's business is selling chemicals manufactured in production lines that it owns.

employer-employee status was denied in the context of the following circumstances: (1) in *Abbott*, the South Carolina Supreme Court held that a retailer "recipient of goods delivered by a common carrier is not the statutory employer of the common carrier's employee," 526 S.E.2d at 514; (2) in *Olmstead*, the South Carolina Supreme Court found that an employee of a common carrier was not a statutory employee of a business that designed and manufactured fiberglass products, 581 S.E.2d at 486; and (3) in *Keene*, the South Carolina Court of Appeals concluded that a maintenance and repair worker was not the statutory employee of a company that manufactured polyester fibers, 2019 WL 575556, at *7. The defining characteristic of each decision appears to be "whether the type of work performed by the worker is the same type of work 'the owner' has established as its business." *Keene*, 2019 WL 575556, at *4.

At the outset of this review, the court acknowledges that "[a]s a federal court sitting in diversity, [][it has] an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court." *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002). In this regard, the court is constrained by *Abbott*, *Olmstead*, and their progeny, *Keene*, to conclude that in South Carolina, maintenance and repair work of equipment by the employees of an independent contractor, without something more, generally does not qualify as part of a manufacturer's and/or seller of goods' trade, business, or occupation under any of the three established tests for statutory employment. *Cf. Edens v. Bellini*, 597 S.E.2d 863, 868 (S.C. Ct. App. 2004) ("(1) is the activity an important part of the owner's business or trade; (2) is the activity a necessary, essential, and integral part of the owner's trade, business, or occupation; or (3) has the identical activity previously been performed by the owner's employees?"). However, the state appellate court in all three decisions acknowledged that "each case must be decided on its own facts." *Olmstead*, 581 S.E.2d at 486 (citing *Glass v.*

*Dow Chem. Co.*, 482 S.E.2d 49, 51 (S.C. 1997); *Abbott*, 526 S.E.2d at 514 (citing *Glass*); *Keene*, 2019 WL 575556, at *3 (citing *Glass*, *Olmstead*).

In this case, there is no dispute that Zeigler and nearly all of DAK's 400 employees at the manufacturing facility were formerly Eastman's employees. (ECF No. 79-1 at 57:1–23.) Moreover, Zeigler did the same type of maintenance work for DAK after the sale as he did for Eastman before the sale. (*Id.* at 60:1–24.) As a result, the court agrees with Eastman that if it "had never sold the plant to DAK, . . . Zeigler would have been performing this same task as an Eastman employee on the day the incident occurred." (ECF No. 127 at 8.) This is the inference that differentiates this case from *Keene* and its parents.[3] To this point, the court observes that the maintenance performed by Zeigler as an Eastman employee before January 31, 2011, was just as important to Eastman's business as the maintenance he performed on December 6, 2016, as an employee of DAK. Therefore, the court's conclusion remains unchanged that Zeigler was a statutory employee of Eastman because "maintenance on a line that produces chemicals that Eastman sells is an important part of Eastman's trade, business, or occupation."[4] (ECF No. 112

---

[3] The court observes that Plaintiff unsuccessfully attempts to show that the relationship between the parties in *Keene* was not any different than the one presented in this case. (*See* ECF No. 129 at 2 n.1 ("However, Celanese's arguments to the trial court [in *Keene*] in its Motion for Judgment Not Withstanding the Verdict should be considered in evaluating the accuracy of this assertion by Eastman [that '[t]he relationship between DAK and Eastman, however, differs substantially from the relationship between Celanese and Daniel in *Keene*']: 'The evidence showed that the activity performed by decedent and his employer was a necessary, essential part of CNA Holdings' plant's operations, without which, the plant would not have been operational. Further, the evidence showed that the activity performed by decedent and his employer was also performed by CNA Holdings' own employees. Without this work, no polyester fiber would have been produced as no machines would have been running.'" (quoting ECF No. 129-1 at 3)).)

[4] As further support for this conclusion, the court observes that Eastman and DAK expressly contracted in the Operating Agreement for DAK's employees to be considered statutory employees of Eastman. (*See* ECF No. 55-3 at 6–7 ("The Parties agree that Eastman shall provide reimbursement to the Purchaser for worker's compensation insurance for all members of the Leased Work Force, which insurance shall name Purchaser and Eastman as co-insureds. Purchaser and those employees of Purchaser who compose the Leased Work Force shall be considered employees of Eastman ONLY for purposes of the worker's compensation laws of the

at 14.)  Accordingly, the court must deny Plaintiff's Motion for Reconsideration.

### III. CONCLUSION

For the foregoing reasons, the court **DENIES** the Motion for Reconsideration of Plaintiff Sallie M. Zeigler.  (ECF No. 126.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

May 20, 2019
Columbia, South Carolina

---

State of South Carolina and for no other purposes. . . . The Parties further agree that the foregoing provisions are expressly intended to afford both Purchaser and Eastman the benefits of the statutory immunity provided by the South Carolina Worker's Compensation Act.").)